IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM DALE HOLLEY,
     Petitioner,

vs.                            Case No.: 3:14cv500/LAC/EMT

JULIE L. JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2). Respondent filed an answer and relevant portions of the state court record (doc. 14). Petitioner filed a reply (doc. 19).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 14).[1] Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2010-CF-1007, with one count of lewd and lascivious molestation (offender 18 or older, victim less than 12) (Count 1) and one count of resisting an officer without

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 14). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

violence (Count 2) (Ex. A at 11).  On March 11, 2011 (after a jury had been selected for Petitioner's trial (*see* Ex. A at 34; Ex. B; *see also* Ex. C at 4)), Petitioner signed a written plea agreement, pursuant to which he agreed to plead nolo contendere to Count 1 as charged, and he agreed to the factual basis for the charge as set forth in the arrest report and the plea agreement (Ex. A at 35–39). Pursuant to the agreement, the parties agreed that Petitioner would be adjudicated guilty of Count 1 and sentenced to a mandatory minimum term of twenty-five years in prison followed by a life term of sex offender probation (*id.*).  The parties further agreed that the State would announce a nolle prosequi as to Count 2 (*id.*).  The court conducted a colloquy and accepted Petitioner's plea (Ex. C). The court then adjudicated Petitioner guilty of Count 1 and sentenced him to a minimum mandatory term of twenty-five years in prison followed by a term of probation for natural life (*see* Ex. A at 40–44; Ex. C).  The court awarded pre-sentence jail credit of 215 days (*id.*).

After being granted a belated appeal (*see* Ex. D), Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-1397 (Ex. E).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*).  Petitioner did not file a pro se initial brief.  The First DCA affirmed the judgment per curiam without written opinion on December 26, 2012 (Ex. F).  <u>Holley v. State</u>, 104 So. 3d 1091 (Fla. 1st DCA 2012).  The mandate issued January 23, 2013 (*id.*).

On July 15, 2013, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G at 7–15).  He filed an amended motion on July 25, 2013 (*id.* at 17–25).  In an order rendered October 10, 2013, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty days (*id.* at 30–33).  Petitioner filed an amended motion on December 4, 2013 (*id.* at 37–44). The state circuit court summarily denied the amended Rule 3.850 motion in an order rendered March 7, 2014 (*id.* at 46–53).  Petitioner appealed the decision to the First DCA, Case No. 1D14-1508 (Ex. H).  The First DCA affirmed the decision per curiam without written opinion on June 30, 2014, with the mandate issuing July 28, 2014 (Ex. J).  <u>Holley v. State</u>, 145 So. 3d 834 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on September 22, 2014 (doc. 1).

## II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).   "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Richter, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in

concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that

he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly

explain state law." Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [v. Campbell], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).

IV.   CLEARLY ESTABLISHED FEDERAL LAW APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. <u>Lafler v. Cooper</u>, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing <u>Missouri v. Frye</u>, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." <u>Lafler</u>, 132 S. Ct. at 1387.  The two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) applies to claims that counsel was ineffective during the plea process.  <u>Lafler</u>, 132 S. Ct. at 1384 (applying <u>Strickland</u>'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); <u>Frye</u>, 132 S. Ct. at 1404, 1409–10 (applying <u>Strickland</u>'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); <u>Hill v. Lockhart</u>, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying <u>Strickland</u>'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

<u>Strickland</u>'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"  <u>Hill</u>, 474 U.S. at 57 (quoting <u>Strickland</u>, 466 U.S. at 688).  The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances."  <u>Strickland</u>, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." Id. This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. Id. at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>Strickland</u>, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 131 S. Ct. at 788.  As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

V.     PETITIONER'S CLAIMS

   A.     <u>Ground One:  "Trial counsel was prejudicially ineffective for failing to investigate 'laws, facts, and a medical expert witness,' relevant to an involuntary intoxication defense."</u>

Petitioner alleges at the time of the incident giving rise to the charge, he was being treated by Dr. Mixon of the Santa Rosa Medical Clinic (doc. 1 a 5–7).  He alleges he was taking prescribed medication in the form of Tylenol 3 (with codeine) and Flexeril (*id.* at 6).  Petitioner alleges he suffered "blackouts" while he was under the influence of the medications (*id.*).  He alleges at the time of the incident, he was staying with his daughter (*id.*).  He alleges he had taken his prescribed medications and fallen asleep on the couch (*id.*).  He alleges he later awoke and entered his grandchildren's bedroom, where he had slept the two previous nights while the grandchildren stayed with a relative (*id.*).  Petitioner alleges he became light-headed and started to lie down on the first bunk, but he rolled out of the bed and wedged himself between the corner of the closet and the foot

of the bed, causing him to twist his knee and cut his arm (*id.*).  Petitioner alleges he regained his footing and started to lie down on the second bed, but he fell head-first into a chest of drawers (*id.*). Petitioner alleges he stood up, dazed and confused, and got onto the bed, completely unaware that his granddaughter was lying on it (*id.*).  Petitioner alleges he had no recollection of anything that happened after that "until going back out of the bedroom realizing someone said something, reaching couch [sic] and sitting down" (*id.* at 7).  He alleges he returned to the bedroom "to find out what happened and then said he would leave" (*id.*).  He alleges he went onto the porch, and his daughter "brought him to awareness" by yelling at him, demanding that he leave, and telling him the police were coming after him (*id.*).  Petitioner alleges he got in his truck and left, but then realized he could not and should not be driving, so he returned to his daughter's house and waited for the police (*id.*).

Petitioner alleges he consistently told everyone, including his trial counsel, that he did not purposefully do anything improper (doc. 1 at 7).  He alleges he also told counsel that he was taking medication prescribed by Dr. Mixon, and suffered from "blackouts" from the medication (*id.*). Petitioner alleges counsel failed to investigate an involuntary intoxication defense by contacting Dr. Mixon, and instead advised Petitioner that he had no defense to the charge (doc. 1 at 7; doc. 2 at 4–6).  Petitioner alleges if counsel had interviewed Dr. Mixon, he would have discovered that Petitioner lacked the specific intent and mental capacity to commit the offense (*id.*).  Petitioner alleges counsel's advising him to plead no contest to the charge, without investigating an involuntary intoxication defense by contacting Dr. Mixon, was ineffective assistance (*id.*).

Respondent asserts that this claim "corresponds" to Petitioner's first claim in his Rule 3.850 motion, except in his Rule 3.850 motion, Petitioner did not include facts about rolling off the first bed, injuring himself, falling into the chest of drawers, and losing consciousness (doc. 14 at 3–4). Respondent asserts Petitioner also did not allege to the state circuit court that he informed counsel that he was taking medication prescribed by Dr. Mixon at the time of the incident (*id.* at 5). Respondent argues that to the extent Petitioner alleges a new factual basis for Ground One, he did not exhaust the claim, and it is procedurally barred (*id.* at 4).  As to the factual basis that Petitioner presented in his Rule 3.850 motion, Respondent contends the state court adjudicated the merits of the claim, and the state court's adjudication was not based upon an unreasonable determination of

the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 3–6).

In Petitioner's reply, he agrees with Respondent that Ground One is unexhausted and procedurally defaulted (doc. 19 at 4).  He contends his procedural default was caused by his lack of legal representation in the Rule 3.850 proceeding; therefore, he is entitled to de novo review of Ground One pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) (*id.* at  4–8).

In Ground One of Petitioner's amended Rule 3.850 motion, he alleged his trial counsel was ineffective for failing to investigate the law, facts, and a "medical expert witness" relevant to an involuntary intoxication defense, and for misadvising him that there was no defense to the charge (Ex. G at 38–41).  Petitioner alleged that at the time of the offense, he was being treated by Dr. Mixon and taking prescribed medication, including Tylenol 3 (with codeine) and Flexeril (*id.*). Petitioner alleged that he consistently told counsel that he did not purposefully do anything improper (*id.*).  He also alleged that Dr. Mixon was available to testify and would have testified that Petitioner's medications could cause blackouts, and rendered him unaware of his actions and the consequences of those actions (*id.*).

The state circuit court cited the Strickland standard as applicable to Petitioner's claim (Ex. G at 47–48).  The court adjudicated the claims as follows:

> Defendant first claims that his counsel was ineffective in failing to investigate "law, facts, and a medical expert witness" relevant to an involuntary intoxication defense.  Specifically, Defendant alleges that at the time of the offense Defendant was under the medical treatment of Dr. Mixon, a licensed physician with the Santa Rosa County Medical Clinic, and he was taking the prescribed medications of Tylenol 3 (with codeine) and Flexeril. Defendant claims that he suffered "blackouts" under the influence of these prescribed medications.  Defendant further alleges that Dr. Mixon was available for trial and able to testify to this effect.  Defendant claims that instead of investigating and discovering Defendant had a possible defense of involuntary intoxication, counsel advised Defendant he had no defense to the charge and advised Defendant to enter a plea.  Defendant claims that if counsel had investigated and provided this "complete" defense to the charge, he would not have entered a plea, but would have proceeded to trial.
>
> Defendant's claim is facially insufficient.  While Defendant alleges he "has consistently presented to everyone, including trial counsel, that he did not do

Case 3:14-cv-00500-LC-EMT   Document 22   Filed 09/21/15   Page 15 of 23

anything improper on purpose," Defendant fails to allege that he ever informed counsel he was taking prescribed medications at the time of the incident. Additionally, Defendant fails to allege that he ever informed his counsel of Dr. Mixon as a possible witness.  See Jacobs v. State, 880 So. 2d 548, 553 (Fla. 2004) (Defendant must specifically identify witness, state the substance of the witness's evidence, and aver the witness was known to counsel to allege facially sufficient claim).  As Defendant has already been given the opportunity to amend his motion and this claim remains facially insufficient, the Court chooses to deny this claim with prejudice.  See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 2007); and Lawrence v. State, 987 So. 2d 157 (Fla. 2d DCA 2008).

(Ex. G at 48–49).

Petitioner appealed the circuit court's decision to the First DCA (Ex. H).  In his initial brief, he argued that he informed defense counsel several times that he was taking medication prescribed by Dr. Mixon, and that he was taking it on the night of the incident (id. at 5–6).  Petitioner argued that he informed counsel that the medication caused him to have blackouts (id.).  The appellate court affirmed the lower court's decision without written opinion (Ex. J).

To satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation."  McNair, 416 F.3d at 1302; see also Johnston v. Singletary, 162 F.3d 630, 634–35 (11th Cir. 1998); Weeks v. Jones, 26 F.3d 1030, 1044–46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"); Footman v. Singletary, 978 F.2d 1207 (11th Cir. 1992).  To sufficiently exhaust a claim, the petitioner must have presented the state court with the same particular legal basis for relief in addition to the facts supporting it.  See Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1350 (11th Cir. 2004).  A claim presented in a federal petition that is "clearly distinct, in form and in substance" from the claim presented to the state courts is unexhausted.  Id. at 1348.

Here, the particular act of ineffectiveness that Petitioner presented in the Rule 3.850 proceeding was counsel's failure to investigate an involuntary intoxication defense, more specifically, counsel's failure to investigate Dr. Mixon as a potential witness.  This is the same act

of ineffectiveness that Petitioner presents in his § 2254 petition.  The factual foundation that Petitioner presented in his post-conviction pleading was that he informed counsel that he did not purposefully do anything improper in relation to his granddaughter; he was under the influence of medication prescribed by Dr. Mixon at the time of the incident; defense counsel advised him that he had no defense to the charge; defense counsel conducted no investigation prior to advising him to plead no contest; counsel never interviewed Dr. Mixon; and Dr. Mixon was available to testify and would have testified that Petitioner's prescribed medications could cause blackouts that would render Petitioner unaware of his actions and the consequences of those actions (Ex. G at 38–41).  Petitioner presented some new facts in his § 2254 petition, specifically, details of his actions and condition immediately prior to the incident involving his granddaughter, and an allegation that he told counsel about the medication prescribed by Dr. Mixon and that he suffered blackouts from the medication.  However, these additional facts do not render Ground One clearly distinct, in form and in substance, from the claim he presented in his Rule 3.850  motion such that the claim presented in Ground One is a new claim altogether.  Therefore,  the undersigned concludes that Petitioner fairly presented, and thus exhausted, Ground One.

As previously discussed, the First DCA denied relief without discussion.  When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary.  *See* Richter, 562 U.S. 86, 99.  The presumption may be overcome when there is a reason to think some other explanation for the state court's decision is more likely.  *Id.* at 99–100.  Here, Petitioner has not rebutted the presumption that the First DCA adjudicated the merits of his ineffective assistance of counsel ("IAC") claim.[5]  Therefore, § 2254(d) applies.[6]  *See* Richter, 562 U.S. at 100.

_____

[5] That the First DCA affirmed the lower court's denial of the claim as insufficiently pled does not constitute an independent and adequate state procedural-bar ruling.  *See* Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 913 (11th Cir. 2009).

[6] Because the First DCA's decision in the Rule 3.850 proceeding was the last state court adjudication of the merits of the federal claim, it is that adjudication that is reviewed under § 2254(d).  *See* Hittson v. GDCP Warden, 759 F.3d 1210, 1231 (11th Cir. 2014) (citing Newland v. Hall, 527 F.3d 1162, 1198–99 (11th Cir. 2008)).

An accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense. Brancaccio v. State, 27 So. 3d 739, 741 (Fla. 4th DCA 2010).  Stated differently, the definition of insanity has been expanded to include situations in which a person could not distinguish right from wrong as a result of the involuntarily-induced intoxicated state.  *See id.* (citing Miller v. State, 805 So. 2d 885, 887 (Fla. 2d DCA 2001)).  In order to establish an involuntary intoxication defense, a defendant must first present sufficient evidence that an intoxicated condition was brought about by the introduction into the defendant's body "of any substance which he does not know and has no reason to know has a tendency to cause an intoxicated or drugged condition." Brancaccio, 27 So. 3d at 741.  The defendant would then have the burden to prove that this involuntary intoxication rendered him unable to understand what he was doing and to understand the consequences of his actions, or if he did understand, that he was unable to know that his actions were wrong.  *See id.* (citation omitted).

Here, Petitioner admitted in a sworn, written statement to Deputy Gibson, which Petitioner provided to Gibson after being advised of his Miranda rights and signing a written waiver of those rights, that although he did not touch his granddaughter's breasts, butt, or vagina while she was in her bed (as she alleged), he did rub her hand and arm (*see* Ex. A at 1–2).  This admission refutes his allegation that he had blacked out or was unconscious during the contact with his granddaughter in her bed.

Additionally, Petitioner admitted that he recalled some of his own conduct, and that of others, immediately preceding and immediately following the contact with his granddaughter, which is also inconsistent with the theory that he blacked out or was unconscious due to the medications.  For example, Petitioner recalls stumbling around the room, injuring himself, and stumbling into his granddaughter's bed.  Additionally, he recalls that after he stumbled into his granddaughter's bed, "someone said something" that caused him to leave the bedroom and go back into the living room (*see* doc. 1 at 7).[7]  Petitioner recalls that he returned to his granddaughter's bedroom "to find out

---

[7] Petitioner's granddaughter reported to law enforcement that after Petitioner touched her breasts, vagina, and butt, he asked her if she wanted him to stop (*see* Ex. A at 2).  She reported that she said "yes," and Petitioner said "okay," and left the room (*id.*).

what happened and then said he would leave" and went out onto the porch  (*see id.*).[8]  Petitioner alleges that while he was on the porch, his daughter demanded that he leave, and told him that the police were coming after him (*id.*).  He alleges he got in his truck and left, but then realized he could not and should not be driving, so he returned to his daughter's house and waited for the police in the front yard (*id.*).  Not only are his recollections inconsistent with the theory that he blacked out or was unconscious due to the medications, his conduct immediately after his contact with his granddaughter in her bed suggests that he knew that his contact with her was wrong and had criminal consequences.

Moreover, Petitioner failed to show that defense counsel's  interviewing Dr. Mixon would have produced any reliable evidence to support an involuntary intoxication defense.  Petitioner did not proffer any evidence, for example, medical records or an affidavit or otherwise reliable statement from Dr. Mixon, suggesting that Dr. Mixon would have testified that Petitioner's prescribed medications could have rendered him unable to understand what he was doing and the consequences of his actions or, if he did understand, that the medications rendered him unable to know that his actions were wrong.

---

[8] Petitioner's granddaughter reported that Petitioner returned to her room and asked her if she wanted him to leave, but she did not answer and instead waited until she heard him close the front door, and then reported his actions to her mother (Ex. A at 2).

In light of the record before the state court, Petitioner failed to show that the state court's adjudication of his IAC claim was unreasonable.[9]  Therefore, he is not entitled to federal habeas relief on Ground One.[10]

      B.    <u>Ground Two</u>: "Trial counsel was prejudicially ineffective for not properly conveying the State's plea offer through misadvice of counsel by failing to adequately inform the Petitioner rendering his plea involuntary in violation of the Sixth Amendment of the United States Constitution."

Petitioner states that the only reason he accepted the State's plea offer (as explained to him by defense counsel) was to spare his daughter and granddaughter from having to testify at trial (doc. 1 at 8; doc. 2 at 7–9).  He alleges that when defense counsel explained the plea offer to him, counsel never explained that he would not be able to earn gain time for good behavior; therefore, he was under the impression that he would receive gain time, which would have shortened his sentence by forty-five months (*id.*).  Petitioner alleges he never would have pled to the charge and would have proceeded to trial if he had known that he would not be eligible for gain time (*id.*).

---

[9] The Supreme Court has made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it.  *See* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); 131 S. Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."); <u>Holland</u>, 542 U.S. at 652; <u>Yarborough v. Gentry</u>, 540 U.S. 1, 6, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (denying relief where state court's application of federal law was "supported by the record"); <u>Miller–El</u>, 537 U.S. at 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *see also* <u>Bell</u>, 535 U.S. at 697 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law); <u>Borden v. Allen</u>, 646 F.3d 785, 816–17 (11th Cir. 2011) (holding that in reviewing a claim under § 2254(d)(1), the federal court is confined to the allegations made in the prisoner's state court pleading; "Logically, [the state] court could only undertake an 'adjudication of the claim' that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the 'historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts.'") (citing <u>Powell v. Allen</u>, 602 F.3d 1263 (11th Cir. 2010)); <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1233 (11th Cir. 2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[10] Even if the factual variance in the claim presented to the state courts and the claim presented in Ground One of the § 2254 petition was sufficient to render the claim unexhausted for federal habeas purposes, Petitioner still would not be entitled to relief.  Upon de novo review of Petitioner's claim, the undersigned concludes that for the reasons discussed *supra*, Petitioner's allegations fail to satisfy the <u>Strickland</u> standard.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Respondent "assumes" that Petitioner exhausted this claim in the state courts (doc. 14 at 6). Respondent contends the state court's adjudication of the claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 6–7).

Petitioner presented this claim as Ground Three in his amended Rule 3.850 motion (Ex. G at 42–43).  The state circuit court adjudicated the claim as follows:

> Defendant next alleges that his counsel was ineffective for failing to inform Defendant that his minimum mandatory sentence would preclude him from the possibility of early release.  Defendant alleges that if he had known he would not qualify for early release from incarceration, he would not have entered a plea but insisted upon going to trial.
>
> Initially, the Court notes that Defendant was informed several times at the plea hearing that he was pleading to a twenty-five year minimum mandatory sentence.[FN 9]  "Minimum mandatory" means exactly that:  Defendant is mandated to serve a minimum sentence of twenty-five years.  The Court asked Defendant during the plea colloquy if he understood he was to be sentenced to a twenty-five year state prison minimum mandatory sentence, to which Defendant answered "Yes, sir."  If Defendant had any question as to the meaning of "minimum mandatory," he should have posed those inquiries to the Court before indicating he understood the terms of his plea.  Counsel was not deficient for failing to elaborate on the restrictions of Defendant's sentence as it was apparent by the use of the term "minimum mandatory."
>
> > [FN 9:  <u>See</u> Attachment 4, Transcript, Plea and Sentence, March 11, 2011, pp. 2–3.]
>
> Defendant has also failed to demonstrate that he was prejudiced by his counsel's failure to explain the minimum mandatory sentence in further detail.
>
> > [I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial.
>
> <u>Grosvenor v. State</u>, 874 So. 2d at 1181 (Fla. 2004).

The totality of the circumstances surrounding Defendant's plea indicates that Defendant would not have actually proceeded to trial if his counsel had further explained the parameters of his minimum mandatory sentence. Although Defendant has attempted to assert an involuntary intoxication defense in a facially insufficient claim, such a defense would not have likely succeeded at trial. The record shows that Defendant had already picked a jury for his case and immediately before trial decided to accept the twenty-five year minimum mandatory plea offered by the State.[FN 10] The plea colloquy demonstrates that Defendant fully understood he was receiving a mandatory minimum sentence of twenty-five years. If Defendant had not entered a plea in this case and had been found guilty at trial, his maximum possible sentence would have been life in prison. Even if Defendant had been found guilty after trial and had received the minimum sentence, the lowest permissible sentence Defendant could have received is the sentence Defendant is now serving, a twenty-five year minimum mandatory sentence. When considering the totality of the circumstances, Defendant has failed to demonstrate prejudice. Defendant is not entitled to relief as to this claim.

[FN 10: See Attachment 4, Transcript, Plea and Sentence, March 11, 2011, p. 4.]

(Ex. G at 51–52). Petitioner argued this issue on appeal to the First DCA (Ex. H). The appellate court affirmed the lower court's decision without written opinion (Ex. J).

The transcript of the plea hearing supports the state court's factual findings that Petitioner was informed that he was pleading to a twenty-five year minimum mandatory sentence, and that the court asked Petitioner if he understood he would be sentenced to a minimum mandatory twenty-five year prison sentence, and Petitioner answered "Yes, sir." (see Ex. G at 73–74). Assuming that Petitioner's sworn representations during the plea colloquy are true, see United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."), Petitioner failed to show that he was not informed that he would serve a mandatory minimum of twenty-five years (and no less) in prison.

Additionally, Petitioner states that the "only" reason he accepted the plea offer was to spare his daughter and granddaughter from having to testify at trial (see doc. 1 at 8). This specific statement undermines his vague, self-serving, after-the-fact assertion that his "impression" that he would earn gain time credit (almost four years off of his 25-year sentence) was the deciding factor in his decision to accept the plea.

Petitioner failed to demonstrate that the state court's adjudication of Ground Two was based upon an unreasonable determination of the facts or was an unreasonable application of Strickland. Therefore, he is not entitled to relief on this claim.

VI.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 21st day of September 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**